IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT

2009 SEP 18 PM 1:24

CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | CR 108-061 |
| | * | |
| CALVIN LEE STEVENSON, JR., | * | |
| | * | |
| Defendant. | * | |

# O R D E R

The captioned criminal matter is before the Court on Defendant's second motion for a new trial. (Doc. no. 198.) Defendant argues that he was deprived of his Sixth Amendment right to counsel. Based on the pleadings, the record, and the relevant law, Defendant's motion is **GRANTED**.

## I. BACKGROUND

Defendant Calvin Lee Stevenson, Jr., was arrested on June 26, 2008 and charged in Richmond County Superior Court on several counts including armed robbery. Stevenson's father hired local attorney Gregory Leopard and paid him a retainer of $5,000 to represent his son on the Superior Court charges. On March 20, 2008, a complaint was filed

1

against Stevenson and three co-defendants in this Court.[1] (Doc. no. 1.) Under the Criminal Justice Act, this Court will appoint an attorney admitted to the Southern District of Georgia to represent an indigent criminal defendant ("CJA appointment"). In order to receive a CJA appointment, the normal procedure for this Court is to have the defendant sign an affidavit swearing that he cannot afford representation. The Clerk, who maintains a rotating list of attorneys admitted to the district, will appoint an attorney on the list to represent the indigent defendant.

On March 26, 2008, the Honorable W. Leon Barfield, United States Magistrate Judge, appointed Leopard to represent Stevenson. (Doc. no. 21.) However, the record in this case does not reflect that Stevenson signed an indigency affidavit, but there were some indications in the Pre-Trial Services Report that he was indigent.[2] It is also unclear from the record whether Stevenson understood that although he had retained Leopard for the Superior Court charges, this Court was considering him indigent and thus

---

[1] The Superior Court charges were placed on the "dead docket."
[2] Although not part of the record, the Pre-Trial Services Report prepared for the Magistrate Judge by the U.S. Probation Office does have a section regarding finances which indicated that Stevenson's only asset was a 1978 Cutlass Supreme valued at approximately $1,000. (Rpt., p. 2.) The report also states that Stevenson was unemployed. (Id. at 1.)

2

had appointed Leopard to represent him on the federal charges.[3]

The relationship between Stevenson and Leopard apparently deteriorated over the course of the next few months. On September 26, 2008, Stevenson filed a complaint against Leopard with the State Bar of Georgia. In response, Leopard filed a motion to withdraw as Stevenson's attorney on October 10, 2008. (Doc. no. 122.) An *ex parte* hearing on this motion was held before the Magistrate Judge on October 14, 2008.

At the hearing, the Magistrate Judge initially attempted to resolve any confusion as to how Leopard was retained for the state charges but appointed for the federal charges. The Magistrate Judge asked Leopard if it was merely a coincidence that he was appointed to this case after being retained in state court. Leopard replied, "I don't know what the mechanisms are to appoint me. I know that sometimes it happens and sometimes it does not." (Doc.

---

[3] Stevenson and two of his co-defendants, Andre Lewis and Jeremiah Garrett, appeared in front of the Magistrate Judge on March 27, 2008 for their initial appearance based on the filing of the complaint that initiated this case. (Doc. no. 2.) Lewis was present with an attorney. The docket reflects that Lewis retained this attorney, and the attorney entered a notice of appearance on the date of this hearing. (Doc. no. 9.) Garrett was unrepresented at the hearing. The Magistrate Judge informed him that he could either hire an attorney or the Court would appoint one for him. The record reflects that Garrett later signed an affidavit swearing he was indigent and received a CJA appointed attorney. Leopard was present at this initial appearance to represent Stevenson, but no mention is made at the hearing whether Leopard was appointed or retained. Again, the docket simply reflects that Leopard was appointed, but not that Stevenson had in fact sworn he was indigent.

no. 132 at 5.) The Magistrate Judge asked Leopard if he contacted the Clerk to let her know he was retained on the state level and wanted to be appointed on the federal case. Leopard replied, "No, your Honor. I feel quite confident that didn't happen." (Id. at 6.) The Magistrate Judge next inquired whether Stevenson filed a financial affidavit indicating that he was indigent. The Clerk stated she was sure he had, but she could not find it in the original file. (Id. at 6-7.) The Magistrate Judge, still not satisfied that Leopard's appointment was pure coincidence, stated that he would like for the Clerk to clarify this if possible. (Id. at 7.)

Toward the end of the hearing, Leopard raised the issue of his appointment once again. He stated, "I believe every time I'm hired in a State case and then it becomes a Federal case, or I'm notified that it may or is going to become, I believe that I do call the court and let them know. I believe that I do, and just let them know, look, I'm in the case." (Id. at 20.) The Magistrate Judge stated that he did not believe Leopard had done anything wrong in regards to his appointment because lawyers generally charge more to represent a defendant in Federal Court than in State Court. Thus, the Magistrate Judge stated, "I'm not saying that I think Mr. Stevenson's

4

affidavit, that was obviously filed in court saying he was indigent, was anything but accurate. So my appointment of you representing him in this case is fine as far as I'm concerned." (Id. at 21.)

The majority of the hearing was spent discussing Stevenson's bar complaint against Leopard. After the discussion, the Magistrate Judge concluded that their problem was simply a failure to communicate. (Id. at 18.) The Magistrate Judge told Stevenson that while he was not sure how Leopard was appointed to his case, he should consider himself lucky because Leopard was an experienced and knowledgeable defense attorney. (Id. at 16.) The Magistrate Judge then informed Stevenson "you are entitled to Court-appointed counsel. I have appointed Mr. Leopard to represent you in this case and that's it. You are not entitled to counsel of your own choice. Your filing a bar complaint against a lawyer is not going to get him relieved in your case so you can have another lawyer." (Id. at 16-17.) Stevenson confirmed that he did not want another attorney. (Id. at 17.)

The Court notes that although Stevenson now claims that Leopard was appointed "without [his] knowledge or consent, (doc. no. 211, ¶ 2), the *ex parte* hearing is replete with reference to the appointment of Leopard, as

5

well as Stevenson's presumed indigent status. For example, when the Magistrate Judge raised the issue of how Mr. Leopard came to be appointed in the federal case, he asked, "I take it that Mr. Stevenson filed a financial affidavit with the probation office indicating he was indigent. Is that correct?" (Id. at 6.) Leopard answered in the affirmative, and Stevenson did not contradict that response. (Id.) Later in the hearing the Magistrate Judge again stated that Stevenson had filed an affidavit stating that he was indigent, and Stevenson again failed to contradict that statement. (Id. at 21.)

At the conclusion of the hearing, the Magistrate Judge instructed Leopard and Stevenson to meet and discuss Leopard's continued representation of Stevenson in the case. (Id. at 18.) If they were unable to resolve their conflicts, the Magistrate Judge stated that he would "bring Mr. Stevenson back in and explain to him that he's going to have to represent himself" which would be "an act of lunacy." (Id. at 17-18.) However, the Magistrate Judge also stated that if Stevenson could not work out his problems with counsel, he would be brought back to court again to review the consequences of a waiver of counsel. (Id. at 22).

Stevenson elected to continue to allow Leopard to represent him. The case proceeded to trial, and on February 19, 2009, a jury convicted Stevenson on all charges.

## II. DISCUSSION

The Sixth Amendment states "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The Supreme Court holds that the assistance of counsel is "one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" Gideon v. Wainwright, 372 U.S. 335, 343 (1963) (quoting Johnson v. Zerbst, 304 U.S. 458, 462 (1938)). The Court has further held that where a defendant does not require appointed counsel, he "should be afforded a fair opportunity to secure counsel of his own choice." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) (quoting Powell v. Alabama, 287 U.S. 45, 53 (1932)). In Gonzalez-Lopez, the Supreme Court considered a district court's denial of a *pro hac vice* admission request filed by defendant's attorney of choice. Id. The Court

determined that the district court wrongly denied the attorney's application and thus wrongly denied the defendant his counsel of choice. Justice Scalia, writing for the majority, stated "where the right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of representation he received." Id. at 148. The Court further stated that while "a choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied," this holding would not disturb the Court's previous holdings that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." Id. at 150-51 (emphasis supplied) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)).

The Eleventh Circuit has noted that for Gonzalez-Lopez to apply, there must be a showing that the defendant was "wrongly" or "erroneously" deprived of his choice of counsel. United States v. Zangwill, 197 Fed. Appx. 888, 891 n.1 (11th Cir. 2006). Here, the fact that Stevenson filed a bar complaint against his attorney indicates that

8

he was unhappy with his representation. The Magistrate Judge conducted the *ex parte* hearing on Leopard's motion to withdraw under the assumption that Stevenson had initially declared himself indigent and requested to have counsel appointed. Despite indications of indigency in the Pre-Trial Services Report and Stevenson's failure to correct the misapprehension at the *ex parte* hearing that he had filled out an indigency affidavit, the Court can find no record of a financial affidavit.

Although the record is clear that the Magistrate Judge understood the significance of whether Stevenson had requested court-appointed counsel, unfortunately the information provided on the existence of an indigency affidavit was consistently erroneous, and Stevenson chose not to correct the mistaken information. Harboring this misapprehension about Stevenson's indigency, the Magistrate Judge thus instructed Stevenson that he only had two choices: remain with Leopard or proceed *pro se*. At no time did the Magistrate Judge inform Stevenson that he had the option of firing Leopard and retaining new counsel.

This Court will not place the onus on a criminal defendant to be aware of the difference in his Sixth Amendment rights between having retained counsel and appointed counsel, particularly when, based on incorrect

information provided to the judicial officer by numerous sources, that defendant is directly instructed that he is not entitled to counsel of his choice. Nonetheless, because the record is devoid of a financial affidavit of indigency from Stevenson, the Court concludes that error occurred when Stevenson was informed at the *ex parte* hearing that his only choices were to proceed with Leopard or represent himself. Stevenson should have been afforded an opportunity to retain counsel of his choice. Since that did not occur, under Gonzalez-Lopez, Stevenson was deprived of his Sixth Amendment right to counsel and is entitled to a new trial.

### III. CONCLUSION

Upon the foregoing, Defendant's motion for a new trial (doc. no. 198) is **GRANTED**.

**ORDER ENTERED** at Augusta, Georgia, this ___ day of September, 2009.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA